Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZAHAVA ROSENFELD, | ) Case No. |
| Plaintiff, | ) |
| vs. | ) **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| DEL TACO RESTAURANTS, INC., JOSEPH STEIN, VALERIE L. INSIGNARES, ARI B. LEVY, R.J. MELMAN, JOHN D. CAPPASOLA, JR., LAWRENCE F. LEVY, EILEEN APTMAN, and KAREN L. LUEY, | ) JURY TRIAL DEMANDED |
| Defendants. | ) |

Plaintiff Zahava Rosenfeld ("Plaintiff"), on behalf of herself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through her counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for her Complaint:

- 1 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

### NATURE OF THE ACTION

1. This is an action brought by Plaintiff against Del Taco Restaurants, Inc. ("Del Taco" or the "Company") and the members of Del Taco's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Del Taco will be acquired by Jack in the Box Inc. ("Jack in the Box" or "Parent"), through Jack in the Box's subsidiary Epic Merger Sub Inc. ("Merger Sub") (the "Proposed Transaction").

2. On December 6, 2021, Del Taco and Jack in the Box issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated December 5, 2021 (the "Merger Agreement") to sell Del Taco to Jack in the Box. Under the terms of the Merger Agreement, Del Taco stockholders will receive $12.51 in cash for each share of Del Taco common stock they own. The Proposed Transaction is valued at approximately $575 million.

3. On January 28, 2022, Del Taco filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Del Taco stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the background of the Proposed Transaction; and (ii) Piper Sandler & Co.'s ("Piper")

- 2 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

potential conflicts of interest. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, Del Taco's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company maintains its principal executive offices in this District; (ii) one or more of the defendants either

- 3 -

resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Del Taco.

9. Defendant Del Taco is a Delaware corporation, with its principal executive offices located at 25521 Commercentre Drive, Lake Forest, California, 92630. The Company develops, franchises, owns, and operates Del Taco quick-service Mexican-American restaurants in the United States. Del Taco's common stock trades on the Nasdaq Capital Market under the ticker symbol "TACO."

10. Defendant Joseph Stein ("Stein") has been a director of the Company since June 2015.

11. Defendant Valerie L. Insignares ("Insignares") has been a director of the Company at all relevant times.

12. Defendant Ari B. Levy ("Ari Levy") has been a director of the Company since November 19, 2013. Defendant Ari Levy previously served as the Company's President and Chief Investment Officer from September 30, 2013 until June 2015.

13. Defendant R.J. Melman ("Melman") has been a director of the Company since June 2015.

14.     Defendant John D. Cappasola, Jr. ("Cappasola") has been President of the Company since January 2017, and Chief Executive Officer ("CEO") and a director of the Company since July 2017.

15.     Defendant Lawrence F. Levy ("Lawrence Levy") has been Chairman of the Board and a director of the Company since November 19, 2013.   Defendant Lawrence Levy previously served as the Company's CEO from August 2, 2013 until June 2015.

16.     Defendant Eileen Aptman ("Aptman") has been a director of the Company since June 2015.

17.     Defendant Karen L. Luey ("Luey") has been a director of the Company since July 14, 2021.

18.     Defendants identified in paragraphs 10-17 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

19.     Jack in the Box is a Delaware corporation, with its principal executive offices located at 9357 Spectrum Center Blvd., San Diego, California 92123.  Jack in the Box operated and franchised 2,218 Jack in the Box quick-service restaurants as of October 3, 2021, primarily in the western and southern United States, including one franchise in Guam.  Jack in the Box derives revenue from retail sales at Jack in the Box company-operated restaurants and rental revenue, royalties (based upon a percent of sales), franchise fees and contributions for advertising and other services from

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

franchisees.  In addition, Jack in the Box recognizes gains or losses from the sale of company-operated restaurants to franchisees.  Jack in the Box's common stock trades on the Nasdaq Global Select Market under the ticker symbol "JACK."

20.    Merger Sub is a Delaware corporation and a direct wholly owned subsidiary of Jack in the Box.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

21.    Del Taco is a nationwide operator and franchisor of restaurants featuring fresh and fast made-to-order cuisine, including both Mexican-inspired and American classic dishes.  As of December 29, 2020, there were 596 Del Taco restaurants, a majority of which are located in the Pacific Southwest.  The Company serves high-quality, freshly prepared food typical of fast casual restaurants but with the speed, convenience and value associated with traditional quick service restaurants ("QSRs"). With attributes of both a fast casual restaurant and a QSR, Del Taco occupies a place in the restaurant market distinct from most competitors.  Company food is prepared in working kitchens where guests see cooks grilling marinated chicken and steak, chopping tomatoes and cilantro for salsa, grating cheddar cheese, slicing avocados and slow-cooking whole pinto beans.

22.    Del Taco's menu offers a combination of Mexican-inspired food, such as tacos and burritos, and American classics, such as "Double Del" cheeseburgers, crinkle-cut fries and milkshakes.  Additionally, the Company's menu features both

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

premium items such as Beyond Tacos, Del Taco's signature plant-based protein taco, Platos plated meals, Epic Burritos, Handcrafted Ensaladas and Fresca Bowls, as well as lower priced items on the Del's Dollar Deals menu. While the lower priced items appeal to a value-oriented customer, the Del's Dollar Deals menu is also designed to increase the average check by offering variety for customers wishing to supplement their order with an additional menu item. The Company's tiered pricing strategy is designed to appeal to customers from a wide variety of socio-economic backgrounds and price sensitivities.

23. On October 14, 2021, Del Taco announced its fiscal third quarter 2021 financial results. Total revenue increased 2.9% to $124.3 million compared to $120.8 million in the fiscal third quarter 2020. Comparable restaurant sales increased 1.8% system-wide, increased 1.6% at company-operated restaurants, and increased 2.0% at franchised restaurants. Company-operated restaurant sales were $112.0 million, representing 2.2% growth from the fiscal third quarter 2020. The Board authorized a quarterly cash dividend of $0.04 per share of common stock payable on November 24, 2021, to shareholders of record at the close of business on November 3, 2021. Reflecting on the Company's results and looking towards the future, defendant Cappasola stated:

> We have made significant progress in signing new franchise development
>
> agreements, having signed a total of seven so far this year, including four
>
> since July, for a total of 53 new future Del Taco restaurant commitments

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

across six states from coast to coast.  Accelerating franchise development with experienced operators looking to diversify their portfolios through our unique QSR+ positioning is a critical part of our growth and these new agreements further support our stated goal of 5% system-wide new unit growth led by franchising beginning in 2023.

We are pleased with our positive third quarter comparable restaurant sales as we lapped strong performance driven by our very successful launch of Crispy Chicken, as well as our momentum thus far in the fourth quarter. Notable product innovation during the third quarter included new Double Cheese Breakfast Tacos and new Stuffed Quesadilla Tacos, and we plan to follow these introductions with the return of our seasonal, limited-time Tamales menu beginning in November.

We recently launched our new holistic CRM platform and introduced our new loyalty App called Del Yeah! Rewards, a points-based loyalty program with four tiers that unlock exciting offers, rewards and experiences which increase along with usage of the app.  We are confident that the App will enable us to not only strengthen our guest engagement but also increase sales and frequency over time.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**The Proposed Transaction**

24.  On December 6, 2021, Del Taco and Jack in the Box issued a joint press release announcing the Proposed Transaction.  The press release states, in relevant part:

> SAN DIEGO & LAKE FOREST, Calif.--Jack in the Box Inc. (NASDAQ: JACK), one of the nation's leading QSR chains, and Del Taco Restaurants, Inc. (NASDAQ: TACO), the nation's second largest Mexican QSR chain by number of restaurants, today announced that the companies have entered into a definitive agreement pursuant to which Jack in the Box will acquire Del Taco for $12.51 per share in cash in a transaction valued at approximately $575 million, including existing debt. While this price per share offers an attractive premium to Del Taco shareholders, Jack in the Box estimates that the transaction values Del Taco at a synergy adjusted multiple of approximately 7.6x trailing twelve months Adjusted EBITDA.
>
> Founded in 1964, Del Taco serves more than three million guests each week at its approximately 600 restaurants across 16 states. 99% of Del Taco restaurants feature a drive-thru, helping to achieve strong off-premise sales and a diversified daypart mix.  Jack in the Box and Del Taco will have more than 2,800 restaurants spanning 25 states with similar guest profiles, menu offerings and company cultures – both priding

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

themselves on serving guests with unique variety, quality, innovation and value.  Together, the companies will create a stronger QSR player with greater scale and the ability to enhance the guest experience while pursuing profitable growth.

"We are thrilled to welcome Del Taco, a beloved brand and proven regional winner, to the Jack in the Box family," said Darin Harris, CEO of Jack in the Box.  "This is a natural combination of two like-minded, challenger brands with outstanding growth opportunities.  Together, Jack in the Box and Del Taco will benefit from a stronger financial model, gaining greater scale to invest in digital and technology capabilities, and unit growth for both brands.  This acquisition fits squarely in our strategic pillars and helps us create new opportunities for the franchisees, team members and guests of both brands."

Mr. Harris continued, "Del Taco has a loyal, passionate guest base and a strong operating model, and we believe that we can leverage our infrastructure, experience refranchising, and development strategy to support Del Taco's growth plans and expand Del Taco's footprint.  We can't wait to welcome the Del Taco team members and franchisees to the Jack family!"

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

David Beshay, a Jack in the Box franchisee and operator of 210+ restaurants, added, "I couldn't be happier about the opportunity that this transaction offers to the franchisees of these two amazing brands.  I believe the Del Taco brand will fit hand in glove with ours, and further enhance the strong franchise and guest-focused culture we have worked so hard to develop at Jack in the Box.  We are excited about the potential to open Del Taco restaurants, helping the company expand these two beloved brands."

John D. Cappasola, Jr., President and CEO of Del Taco, said, "We are excited to have found a partner in Jack in the Box that shares our vision for the future and has the QSR expertise to further accelerate Del Taco's growth.  In recent years, we have uniquely positioned Del Taco as a leader in the growing Mexican QSR category, expanded our digital capabilities to enhance consumer convenience and focused on growing the brand through franchising, resulting in eight consecutive years of franchise same store sales growth and an accelerating new unit pipeline."

Mr. Cappasola, Jr. continued, "We expect this transaction will provide Del Taco with the scale, complementary capabilities and opportunity to become even stronger partners to our franchisees and support their ability to drive substantial growth in our core and emerging markets.  On behalf

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

of Del Taco Restaurants, Inc. Board of Directors, we're confident the agreement delivers immediate value to Del Taco shareholders and will greatly benefit our brand, team members, franchisees and loyal guests for many years to come."

Brent Veach, a Del Taco franchisee and operator of 50+ restaurants, shared, "Del Taco and Jack in the Box are two iconic brands that both represent a tremendous business opportunity for existing and new franchisees.  I am excited how this new larger organization can provide operating cost synergies and further accelerate franchise growth through enhanced support, additional resources and shared real estate knowledge. We are excited to join the Jack in the Box family and assist in growing both amazing brands."

**Compelling Strategic and Financial Benefits**

The transaction is expected to:

- **Deliver Immediate Earnings Accretion with Significant Upside.**  Jack in the Box expects the transaction to be mid-single-digit accretive to earnings per share excluding transaction expenses in year one and meaningfully accretive beginning in year two once full synergizes are realized.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

- **Create a Stronger QSR Player with Enhanced Scale.** This transaction combines two challenger brands with complementary geographic footprints, guest profiles and menu offerings to create a scaled QSR player with a stronger financial model to drive growth and enhanced profitability. Jack in the Box and Del Taco will also benefit from sharing best practices and the opportunity to strengthen guest loyalty and reach new guests. As a combined QSR player, Jack in the Box and Del Taco plan to expand their footprint and continue to drive innovation at both brands to create more unique, innovative menus and exceptional guest experiences.

- **True QSR in the Expanding Mexican Category with a Track Record of Consistent Growth.** The transaction allows Jack in the Box to tap into the growing and attractive Mexican QSR category, where Del Taco has been a leading brand with a track record of consistent performance. By leveraging the combined scale of the companies, we will be able to effectively target secular demographic trends underpinning the category.

- **Reinforce Unit Growth Plans for Both Brands.** By leveraging Jack in the Box and Del Taco's unique strengths and their shared approach to building out markets, Jack in the Box will be able to support growth

- 13 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

plans for both brands. Jack in the Box will benefit from Del Taco's strong operations, construction, and development expertise to drive more efficient expansion supporting its long-term objective of 4% annual unit growth by 2025. By leveraging Jack in the Box's broader footprint, re-franchising experience, and digital capabilities, the combined company expects to drive energized growth at both brands in existing and new markets.

- **Create Substantial Opportunities for Franchisee Expansion and Unit Level Economics.** The transaction brings together two exceptional franchisee bases and creates an enhanced platform for franchisee expansion and growth by leveraging the combined company's scale, technology and digital capabilities. Both brands' franchisees will benefit from economies of scale in supply chain and more diverse opportunities to expand their businesses and drive enhanced profitability. The transaction will enable both brands to provide stronger support to franchisees with a broader set of resources to help them optimize and grow their businesses.

- **Build a Stronger, More Flexible Financial Model.** The transaction will create a stronger combined organization, with increased size and scale, and the financial resources to pursue a wider set of opportunities

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

for profitable growth.  Jack in the Box expects that the combined organization will also benefit from a more efficient capital structure. Jack in the Box expects to maintain a leverage ratio within its target range of 4.0x to 5.5x total debt to Adjusted EBITDA and an investment grade credit rating.

- **Drive Meaningful Synergies.**  Jack in the Box expects the combined company to realize run-rate strategic and cost synergies of approximately $15 million by the end of fiscal year 2023, with approximately half of the synergies achieved in the first year.  Jack in the Box expects to achieve these synergies largely through procurement and supply chain savings, technology and digital efficiencies and other financial benefits, as well as knowledge-sharing initiatives.

**Financing and Path to Completion**

Jack in the Box intends to finance the acquisition through the issuance of additional securitization notes from its existing program with a financing commitment provided by BofA Securities, Inc.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

The transaction is expected to close in the first calendar quarter of 2022 and is subject to customary closing conditions, including receipt of Del Taco shareholder approval and regulatory approvals.

**Advisors**

BofA Securities is serving as exclusive financial advisor and Gibson, Dunn & Crutcher LLP is serving as legal advisor to Jack in the Box.  Piper Sandler & Co. is serving as exclusive financial advisor and McDermott Will & Emery LLP is serving as legal advisor to Del Taco.

**<u>Insiders' Interests in the Proposed Transaction</u>**

25.    Del Taco insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Del Taco.

26.    Notably, pursuant to the Merger Agreement, all outstanding Company options, accelerating restricted stock awards ("RSAs"), and performance-based restricted stock units ("PSUs") will vest and convert into the right to receive the Merger Consideration.   The estimated aggregate amount that would be payable to the Company's seven non-employee directors in settlement of their unvested Company

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

equity awards that will be outstanding as of the effective time is $933,534. The following table summarizes the value of equity awards that the Company's named executive officers stand to receive if they are terminated upon closing of the merger:

| Name | Value of Equity Payable at the Effective Time (Single-Trigger) | | | |
| --- | --- | --- | --- | --- |
| | Stock Options ($) | Accelerating RSAs ($) | PSUs ($) | Total ($) |
| John D. Cappasola, Jr. | 689,772 | 1,505,428 | 402,809 | 2,598,009 |
| Steven L. Brake | 261,927 | 640,437 | 143,865 | 1,046,229 |
| Chad Gretzema | 358,825 | 505,091 | 143,865 | 1,007,781 |

27.    Further, if they are terminated in connection with the Proposed Transaction, Del Taco's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash($)[1] | Equity($)[2] | Perquisites/ Benefits($)[3] | Total($)[4] |
| --- | --- | --- | --- | --- |
| John D. Cappasola, Jr. | 677,813 | 3,665,425 | 20,797 | 4,364,035 |
| Steven L. Brake | 424,657 | 1,385,575 | 20,797 | 1,831,029 |
| Chad Gretzema | 353,188 | 1,254,854 | 15,005 | 1,623,047 |

## The Proxy Statement Contains Material Misstatements or Omissions

28.    The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Del Taco's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

29.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the background of the Proposed Transaction; and (ii) Piper's potential conflicts of interest.

***Material Omissions Concerning the Background of the Proposed Transaction***

30.     The Proxy Statement omits material information regarding the sale process leading to the Proposed Transaction.

31.     For example, the Proxy Statement sets forth that "[t]hirty-five potential acquirors, including Parent, executed confidentiality agreements with the Company . . . [that] contained standstill provisions that did not automatically terminate following the execution of the merger agreement, and each restricted the respective counterparty from requesting the Company to amend or waive the agreed-upon standstill during the applicable standstill periods." Proxy Statement at 27.

32.     The Proxy Statement fails, however, to disclose: (i) whether, prior to their execution, the Board was apprised that the confidentiality agreements executed with thirty-five potential acquirers, including Parent, contained don't-ask-don't-waive ("DADW") standstill provisions; and (ii) if so, the Board's rationale for having DADW standstill provisions included in the confidentiality agreements entered into with thirty-five potential acquirers, including Parent. *In re Ancestry.com, Inc. S'holder Litig.*, Consol. C.A. No. 7988, at 228 (Del. Ch. Dec. 17, 2012) (Transcript) ("*Ancestry*").

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

33. Additionally, the Proxy Statement sets forth, as a reason for the recommendation of the Proposed Transaction by the Board, the Board's view that:

- [] the terms of the merger agreement would not preclude or unreasonably restrict a superior offer from another party, considering:

  o [the Board's] right under the merger agreement to respond to third parties submitting unsolicited acquisition proposals by providing non-public information subject to an acceptable confidentiality agreement, and to engage in negotiations or substantive discussions with any such person, if [the Board], prior to taking any such actions, determines in good faith (after consultation with its financial advisor and legal counsel) that (i) the failure to take such action is reasonably likely to be inconsistent with the directors' fiduciary duties under applicable law and (ii) the competing proposal either constitutes a superior proposal or could reasonably be expected to lead to a superior proposal[.]

*Id.* at 33-34. This representation by the Board is false or misleading with respect to the thirty-four potential acquirers who are restricted from making a topping bid for the Company through the DADW standstill provisions in each of their confidentiality agreements. The Proxy Statement requires additional disclosure to clarify that absent the Company's decision affirmatively to waive the DADW standstill provision in each of the confidentiality agreements, none of the parties to the confidentiality agreements

- 19 -

can approach Del Taco to request a waiver of the standstill in order to present an offer to purchase shares of Del Taco in a consensual merger or other form that might constitute an acquisition proposal under Section 6.02 of the Merger Agreement with Jack in the Box.  *See Ancestry,* Consol. C.A. No. 7988, at 178-79 ("if the seller for some inattentive reason doesn't waive the non-waiver provision, and you don't tell the stockholders that, and you're also advertising that there is the ability for people to make a superior proposal, and then you're leading the stockholders to believe that the people who are legally precluded from even requesting a waiver are within the category of people who can make the offer, that strikes me as misleading, because it's not in fact the case. Because there's ten parties in the world who would have to breach an obligation in order to even request the ability to put on the table a potentially superior proposal. And people are voting in ignorance to that. It's not just an ordinary standstill.").

34.    The omission of this material information renders the statements in the "Background of the Merger" and "Recommendation of the Del Taco Board of Directors and Reasons for the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Piper's Potential Conflicts of Interest***

35.    The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Piper.

36.    The Proxy Statement sets forth that a large portion of Piper's fee is contingent on the consummation of the Proposed Transaction.  *See* Proxy Statement at 47.  The Proxy Statement, however, fails to quantify the amount of Piper's fee that is contingent on closing of the Proposed Transaction.

37.    Additionally, the Proxy Statement fails to disclose whether Piper has performed any past services for Jack in the Box and, if so, the fees received by Piper for performing these services.

38.    The omission of this material information renders the statements in the "Opinion of Del Taco's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

39.    The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Del Taco will be unable to make an informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**CLAIMS FOR RELIEF**

**COUNT I**

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

40.     Plaintiff repeats all previous allegations as if set forth in full.

41.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

42.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.   It misrepresented and/or omitted material facts, including material information about the background of the Proposed Transaction and Del Taco's potential conflicts of interest.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

43.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

44.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

45.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act

46.     Plaintiff repeats all previous allegations as if set forth in full.

47.     The Individual Defendants acted as controlling persons of Del Taco within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Del Taco, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

48.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be

- 23 -

misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.   The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.   They were, thus, directly involved in the making of the Proxy Statement.

50.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.   The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

51.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.   By virtue of their positions as controlling persons, these defendants are liable

pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Del Taco's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of Del Taco, and against defendants, as follows:

A.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Del Taco stockholders;

B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

- 25 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1

Dated: February 1, 2022

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**WEISSLAW LLP**
Joel E. Elkins

By: */s/ Joel E. Elkins*

Joel E. Elkins
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone:  310/208-2800
Facsimile:  310/209-2348
-and-
Richard A. Acocelli
305 Broadway, 7th Floor
New York, NY  10007
Telephone: 212/682-3025
Facsimile:  212/682-3010

*Attorneys for Plaintiff*

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS